**Sammy LANGFORD, Plaintiff,**

v.

**William COUCH, Defendant.**

**No. CIV. A. 98–1502–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 15, 1999.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *pro se* 42 U.S.C. § 1983 action presents the question, unresolved in this circuit, whether inmates seeking solely monetary relief are required to exhaust their administrative remedies in a prison grievance system that does not award monetary damages. For the reasons that follow, 42 U.S.C. § 1997e(a), correctly construed, requires inmates seeking solely monetary damages to exhaust all administrative remedies notwithstanding that such remedies do not include money damages.

### I.

This action grows out of an attack by one inmate on another. Plaintiff, the alleged victim of this attack, was, at the time, an inmate assigned to protective custody at the Powhatan Reception and Classification Center (PRCC) within the Virginia Department of Corrections (VDOC).[1] Plaintiff's protective custody status meant that he was to be kept physically separated from all other inmates, including those disruptive and violent inmates who were themselves segregated in Housing Unit C–3 (HU C–3). As an inmate in protective custody, plaintiff, for his recreation, was required to be taken to an enclosed area at the "M-building" where there would be no physical contact with other inmates.

Plaintiff alleges that on August 18, 1998, correctional officer Couch, the sole defendant in this case, came to his cell and inquired whether plaintiff wanted to engage in recreation. Plaintiff alleges that he asked whether Couch knew that plaintiff was in protective custody, to which Couch merely responded "nothing will happen to you." Plaintiff, initially unconvinced, told Couch that something would indeed happen and inquired as to the number of security guards outside. Couch's response, allegedly, was simply, "you either take your recreation [now] or you will get no recreation." Plaintiff states that

Mr. Sammy Langford, Keen Mountain, VA, for Plaintiff.

Mark L. Earley, Attorney General, Matthew P. Dullaghan, Assistant Attorney General, Commonwealth of Virginia, Richmond, VA, for Defendant.

1. Because plaintiff had fears for his safety in the PRCC's general population, he was assigned to protective custody by the Institutional Classification Committee at an August 13, 1998 hearing.

based upon Couch's assurances, he accepted the recreation option, though he also contends that he did not know that he would be taken to an area that included other inmates.[2]

Plaintiff avers that defendant Couch then escorted him to an enclosed recreation area that contained a volleyball court and a basketball court. Inside this enclosed area were other inmates, specifically, some of the HU C-3 inmates. Recognizing this, plaintiff immediately requested to be returned to his cell. Couch, the sole correctional officer in the recreation area, refused this request and then left the immediate area, failing thereafter to keep watch over plaintiff.[3] At this point, plaintiff claims he was assaulted by another inmate. Specifically, plaintiff avers that as he was turning from the area where the volleyball net was located to walk toward the water fountain, inmate Hall punched plaintiff in the face. Hall allegedly told plaintiff "that's what you get when you are in protective custody. Stop being a pussy and come out with us." Hall then walked away. Plaintiff states that there were no witnesses to the incident[4] and that, as a result of the assault, he sustained six stitches, a black eye, and a "busted nose."

Plaintiff states that after the incident he went to Sergeant Rush's Office and gave a sworn statement concerning the incident. Plaintiff was later taken to the Medical College of Virginia hospital in Richmond for treatment. He alleges that the following day he was taken to the same area with inmates from the third floor of HU C-3 for his recreation. At an unspecified later date, plaintiff was transferred from PRCC to Keen Mountain Correctional Center.

Plaintiff then filed this action *pro se,* alleging that Couch violated his rights under the Eighth Amendment when he acted with deliberate indifference to plaintiff's safety by failing to protect him from the attack of another inmate, and seeking approximately $3,000,000 in compensatory damages. Couch has filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), in which he argues both that plaintiff failed to exhaust his administrative remedy as required under 42 U.S.C. § 1997e(a) and that the complaint fails to state a claim under the Eighth Amendment. Plaintiff has responded to defendant's motion and this matter is now ripe for disposition.

## II.

The Fourth Circuit has not addressed whether 42 U.S.C. § 1997e(a) requires that inmates seeking solely monetary damages exhaust their administrative remedies in a prison grievance system that does not grant monetary relief. Authority from other circuits on this question is split. The Eleventh Circuit has ruled that such inmates are required to exhaust prison administrative remedies,[5] while the Fifth,[6] Ninth,[7] and Tenth[8] Circuits have reached the contrary conclusion. District courts, too, are divided on this question.[9] These

2. Plaintiff states that this was his first opportunity to have recreation at the PRCC and that Couch did not inform plaintiff where he was being taken for recreation.

3. Plaintiff states that Couch went outside the basketball court at the perimeter of the fence on the exterior of the recreation area.

4. Plaintiff specifies that the correctional officer in a nearby tower did not see the assault because he was distracted by a conversation with two inmates.

5. *Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir.1998) (*Bivens* claim).

6. *Whitley v. Hunt,* 158 F.3d 882, 887 (5th Cir.1998) (*Bivens* claim).

7. *Lunsford v. Jumao-As,* 155 F.3d 1178 (9th Cir.1998) (*Bivens* claim).

8. *Garrett v. Hawk,* 127 F.3d 1263 (10th Cir. 1997) (*Bivens* claim).

9. Many district courts, including two in this circuit, have held that § 1997e(a) requires inmates seeking solely monetary damages to exhaust their administrative remedies, even if the prison grievance system does not award money damages. *See, e.g., Sallee v. Joyner,* 1999 WL 101387, at *1 (E.D.Va. Feb.23, 1999) (*Bivens* claim); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884 (S.D.N.Y.

unharmonious results stem from sharply differing views of § 1997e(a), its language and its underlying policy and purpose.

■ Analysis of this issue properly begins with an examination of § 1997e(a)'s language, which, as amended by the Prison Litigation Reform Act of 1996 (PLRA), states that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (emphasis added).[10] The key phrase in the statute is "until such administrative *remedies as are available are exhausted,*" which plainly refers to *all* administrative remedies provided to inmates, not just to those remedies provided that are commensurate with the remedy sought by the inmate plaintiff. This follows from the plain meaning of the terms "available" and "remedy"; the former means "accessible,"[11] "within one's reach,"[12] "at one's disposal,"[13] while the latter means "to rectify,"[14] to "put right,"[15] or a means of "counteracting or removing an outward evil of any kind."[16] The PRCC grievance procedure fits well within the plain meaning of these terms; it was surely accessible to plaintiff, at his disposal and, while it could not compensate plaintiff monetarily for the injuries he suffered, it was a means by which the circumstance that led to or contributed to the

1998) (§ 1983 claim); *Decker v. Watch Commander John Doe,* 1998 WL 883300, at *2 (S.D.N.Y. Dec.17, 1998) (§ 1983 claim); *Fortes v. Harding,* 19 F.Supp.2d 323 (M.D.Pa. 1998) (*Bivens* claim); *Funches v. Reish,* 1998 WL 695904, at *9 (S.D.N.Y. Oct.5, 1998) (*Bivens* claim); *Moore v. Smith,* 18 F.Supp.2d 1360, 1364 (N.D.Ga.1998)(§ 1983 claim); *Smith v. Stubblefield,* 30 F.Supp.2d 1168 (E.D.Mo.1998) (§ 1983 claim); *Spence v. Mendoza,* 993 F.Supp. 785, 788–89 (E.D.Cal. 1998) (§ 1983 claim); *Gibbs v. Bureau of Prison Office,* 986 F.Supp. 941, 944 (D.Md.1997)(*Bivens* claim).

However, other district courts have held that such inmates need not comply with § 1997e(a)'s exhaustion requirement in prison grievance systems that do not award monetary relief. *See, e.g., Lacey v.C.S.P. Solano Med. Staff,* 990 F.Supp. 1199, 1205 (E.D.Cal. 1997)(§ 1983 claim); *Harris v. Mugarrab,* 1998 WL 246450, at *3 (N.D.Ill. May 1, 1998) (§ 1983 claim); *Jackson v. DeTella,* 998 F.Supp. 901, 904 (N.D.Ill.1998) (§ 1983 claim); *Keeling v. Ford,* 1998 WL 566664, at *2 (D.Kan. Aug.21, 1998) (*Bivens* claim); *Polite v. Barbarin,* 1998 WL 146687, at *2 (S.D.N.Y. Mar.25, 1998) (§ 1983 claim); *Russo v. Palmer,* 990 F.Supp. 1047, 1050 (N.D.Ill. 1998) (§ 1983 claim); *White v. Fauver,* 19 F.Supp.2d 305 (D.N.J.1998) (§ 1983 claim); *Davis v. Woehrer,* 32 F.Supp.2d 1078 (E.D.Wis.1999) (§ 1983 claim).

**10.** § 1997e(a), prior to its amendment by the PLRA, provided as follows:

(1) [s]ubject to the provisions of paragraph (2), in any action brought pursuant to [42 U.S.C. § 1983] by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such a case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2) the exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable *standards promulgated under subsection* (b) of this section or are otherwise fair or effective.

42 U.S.C. § 1997e(a) (1994) (amended 1996).

**11.** WEBSTER'S INTERNATIONAL DICTIONARY 180 (3d ed.1993).

**12.** OXFORD ENGLISH DICTIONARY Vol. I, 812 (2d ed.1989).

**13.** *Id.*

**14.** ROGET'S INTERNATIONAL THESAURUS 1171 (4th ed.1977).

**15.** RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1213 (Unabridged ed.1981).

**16.** OXFORD ENGLISH DICTIONARY Vol. XIII, 584 (2d ed.1989).

548

attack on plaintiff, namely the breach of plaintiff's protective custody status, might be rectified or fixed to minimize the risk of recurrence. In sum, because the PRCC grievance procedure was a "remedy" "available" to plaintiff, § 1997e(a) required him to exhaust that remedy before filing a § 1983 damages action.

Some courts reach a contrary result, arguing that a remedy is available, within the meaning of the PLRA, only if it is effective to achieve the precise result sought by an inmate plaintiff. More particularly, these courts conclude that a prison grievance procedure that does not award money damages need not be exhausted because it is not an effective administrative remedy where an inmate seeks such damages.[17] This argument is unpersuasive; a grievance procedure does not become unavailable simply because it is not effective to accomplish a specific purpose; availability does not entail or require effectiveness to achieve a particular end. Nor does the PRCC's grievance procedure fail to qualify as a "remedy" merely because it does not yield the precise result plaintiff seeks. In sum, under § 1997e(a)'s plain language, a prison grievance procedure that does not award money damages is nonetheless an "available" administrative remedy inmates must exhaust even if they seek solely monetary damages.

This conclusion finds firm support in three changes the PLRA made to § 1997e(a). These changes all reflect a clear Congressional intent to make exhaustion of remedies mandatory, without regard to the efficacy of the remedy. First, § 1997e, before it was amended by the PLRA, required "exhaustion of such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996). In enacting the PLRA, Congress chose to

omit the "plain, speedy, and effective" language and to require that inmates exhaust "such administrative remedies as are available." This change is significant given that when Congress amends a statute, federal courts must "presume it intends its amendments to have real and substantial effect." Spence, 993 F.Supp. at 787 (quoting Stone v. I.N.S., 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995)). Accordingly, this amendment shows convincingly that "Congress no longer wanted courts to examine the effectiveness of administrative remedies, but rather to focus solely on whether an administrative remedy program is 'available' in the prison involved." Alexander, 159 F.3d at 1326; See also Sallee, 40 F.Supp.2d at 769. It is fair to conclude that by its deletion of the phrase specifying effectiveness "Congress intended to condition prisoner suits on the exhaustion of such administrative remedies as are available, without regard to whether those remedies are effective." Smith, 30 F.Supp.2d at 1173 (citations and quotations omitted).

The second PLRA amendment made clear that exhaustion is now mandatory. Under the pre-PLRA § 1997e(a), the exhaustion requirement was optional; courts were not required to dismiss cases for failure to exhaust, but instead were permitted to invoke the exhaustion requirement if "appropriate and in the interests of justice." 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996). In enacting the PLRA, Congress omitted this discretionary language, making the exhaustion requirement of § 1997e(a) mandatory.

A third PLRA amendment eliminated a requirement that either the Attorney General certify or the district court determine that the prison grievance procedures were "in substantial compliance with the minimum acceptable standards" promulgated by the Attorney General or otherwise de-

17. See, e.g. Lacey, 990 F.Supp. at 1205 (holding that when the administrative procedure is not empowered to achieve the end sought in the legal action, the procedure is unavailable because it cannot accomplish the purpose of the legal action); Whitley, 158 F.3d at 886–87

(holding that a remedy is unavailable if it does not provide the form of relief sought by an inmate plaintiff because a remedy is available only if it can be availed for the "accomplishment of a purpose") (citations omitted).

termine that the procedures were "fair or effective" before the exhaustion of administrative remedies could be required. 42 U.S.C. § 1997e(a)(2) (1994) (amended 1996). By eliminating this requirement, Congress made unmistakably clear that the effectiveness of prison grievance systems need not now be examined. This change therefore is fully consistent with the first change, which also reflects a Congressional intent that exhaustion of administrative remedies is mandatory and should not be conditioned on the effectiveness of the remedy provided.

The conclusion reached here finds further support in the PLRA's purpose, as expressed by Senator Kyl, namely to deter and reduce the numbers of "frivolous inmate lawsuits ... clogging the courts and draining precious judicial resources." 141 Cong. Rec. S7498–01, S7526 (1995).[18] A mandatory exhaustion requirement was appropriate for inmates, Senator Kyl noted, "given the burden that their cases place on the Federal court system, the availability of administrative remedies, and the lack of any merit of many of the claims

filed under 42 U.S.C. section 1983." *Id.* at S7527. Allowing inmates seeking monetary relief to avoid exhaustion would thwart Congress' purpose in enacting the PLRA changes to § 1997e(a), especially in districts where, as here, the majority of inmate complaints request monetary relief. *See Sallee*, 40 F.Supp.2d at 767. By enacting the broad, mandatory exhaustion requirement in § 1997e(a), Congress sensibly requires courts faced with prisoner claims to give prison administrators the first crack at resolving the dispute.[19] In some instances, this will result in resolving the dispute and providing the inmate with a prompt, if not complete, remedy.[20] Where this does not resolve the dispute, at least reviewing courts will have the benefit of the prison administrators' expertise and an administrative record.

## III.

■ Given that plaintiff was required to exhaust all available administrative remedies at the PRCC, the next question is whether plaintiff has done so. The record indicates that he has not.[21]

18. Congress' intent to conserve judicial resources would be undermined were courts required to examine grievance procedures in each case to determine whether those procedures provided every remedy sought by a prisoner plaintiff. *Alexander*, 159 F.3d at 1326. *See also Spence*, 993 F.Supp. at 788 (holding that Congress, in enacting the PLRA, was not inviting federal courts to "formulate some fifty different rules of federal exhaustion" based on the existence of state administrative remedies capable of achieving certain ends).

19. This was intended and contemplated by Congress. As Senator Hatch explained, the PLRA was enacted to "wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners." 141 Cong. Rec. S14408–01, S14418 (1995). *See also Alexander*, 159 F.3d at 1327, n. 11, 1327 (holding that exhaustion benefits courts because the prison system's expertise is first utilized in interpreting its own regulations and applying them to the facts).

20. Strictly construing the exhaustion requirement may have the effect of improving the

conditions of inmates' confinement. *See Sallee*, at 771 (holding that exhaustion provides prisons with the knowledge to provide a safer environment); *Beeson*, 28 F.Supp.2d at 895 (holding that requiring inmates to report promptly their complaints at prison or risk forfeiture of their claims will likely result in "a more efficient grievance procedure" and "lead to the improvement of prison conditions"). Moreover, inmates required to comply with the exhaustion requirement may realize that "monetary damages are unnecessary or that monetary damages would not fully compensate [them] for [their] injuries." *Sallee*, at 771.

21. This conclusion is reached, in part, upon review of an affidavit filed by PRCC Institutional Ombudsman Bedwell and copies of plaintiff's grievances. These documents go solely toward Couch's argument that plaintiff failed to exhaust his administrative remedies and are properly considered in evaluating Couch's 12(b)(1) motion. *See Williams v. U.S.*, 50 F.3d 299, 304 (4th Cir.1995) (holding that in ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings to resolve factual disputes regarding jurisdiction).

The PRCC grievance procedure available to plaintiff has an informal and a formal component. Pursuant to Departmental Operating Procedure (DOP) 10–2, applicable to VDOC inmates since 1994, the informal component must be pursued first and completed before an inmate may initiate the formal component.[22] The informal component at the PRCC requires an inmate to raise his concerns with a designated PRCC official. If the claim is not resolved through the informal component, the inmate may then pursue the formal component, which requires an inmate to file a formal grievance. Pursuant to DOP 10–2, an inmate must pursue his claim through all available levels of appeal to complete the formal component. In this instance, plaintiff had two levels of appeal available to him. See DOP 10–2.12.

Plaintiff completed neither the informal nor the formal component of the PRCC process. First, he failed to register an informal complaint with Lt. Hollifield, the PRCC official designated to receive and deal with such complaints. He also failed to file a proper formal grievance and to pursue his claims on appeal. Instead, plaintiff filed two regular grievances, nei-ther of which raised the precise claim asserted here. In an August 28, 1998 grievance, plaintiff complained that he had not received recreation since the date of his assault. In a September 25, 1998 grievance, plaintiff requested a § 1983 form, making clear that he wanted the form to file a lawsuit concerning his assault.

Because plaintiff did not follow PRCC informal procedures before filing his grievances, both grievances were returned to him unprocessed as improperly filed. On both occasions, plaintiff was advised by PRCC Institutional Ombudsman Bedwell that before plaintiff's formal grievances would be processed, he had to first satisfy the informal component of the PRCC grievance process by addressing his concerns with Lt. Hollifield.[23] Despite these instructions, plaintiff did not attempt to resolve this matter with Lt. Hollifield.

Plaintiff claims he was confused about the requirements of VDOC's grievance procedures.[24] This claim of confusion fails in the face of Ombudsman Bedwell's undisputed explicit directions to plaintiff as to how to comply with PRCC grievance procedures. Absent any allegations or evidence that he was prevented from comply-

22. DOP 10–2.10 states that:
   [p]rior to submitting a formal grievance, the inmate should demonstrate that he has made a good faith effort to resolve the grievance informally through the processes, practices, or procedures available at the institution to inmates to secure institutional services or resolve complaints (for example, the institution[']s request procedure, Warden's Call, or other established procedure available at the facility).

23. In his August 28, 1998 grievance, plaintiff specified that he had written Lt. Hollifield requesting recreation and had waited for five days without receiving a response. Plaintiff stated he felt he was being ignored. That grievance was returned to him unprocessed along with a written response by Bedwell, who advised plaintiff that he:
   should have addressed this matter with Lt. Hollifield. DOP 866 requires you to attempt to resolve complaints with the appropriate staff member prior to filing a grievance. I'm forwarding a copy of this form to Lt. Hollifield to handle.

Plaintiff's September 25, 1998 grievance was returned to him unprocessed, along with a response from Bedwell instructing plaintiff that he needed to:
   address this matter with Lt. Hollifield as your informal attempt to filing a complaint. You may then submit a grievance regarding the issue if you feel Lt. Hollifield didn't resolve it. I'm also attaching your requested [§ ] 1983 form.

24. In this regard, plaintiff contends that:
   [h]ow could I have exhausted administrative remedies when I did not know you had to. And I did not know the address. Plus [PRCC] never gave me any response from the grievance forms I filled out. When I heard you had to write to the administrator my 1983 form was already mailed and processed. It was to (sic) late. If I could have gone to the law library, I could have done this correctly. And I would have known about the Exhaustion [of] Administrative Remedies.

ing with PRCC grievance procedures,[25] plaintiff cannot avoid or evade § 1997e(a)'s exhaustion requirement.

## IV.

Because plaintiff has failed to satisfy § 1997e(a)'s exhaustion requirement, this action must be dismissed without prejudice. The Warden of the Keen Mountain Correctional Center, where plaintiff is now incarcerated, will be directed to advise plaintiff as to how he can now exhaust his administrative remedies. The question whether plaintiff may refile his suit if now precluded from utilizing the VDOC grievance system is neither reached, nor decided at this time. An appropriate order will issue.

**25.** *See Johnson v. Edlow, et al.,* Civil Action No. 98–466 (E.D.Va. Feb. 12, 1999) (holding that inmate plaintiff satisfied § 1997e(a) where he attempted to exhaust all available administrative remedies, but was prevented from doing so by prison personnel). Plaintiff's allegation in his August 28, 1998 grievance that he had written to Lt. Hollifield requesting recreation and had not received a response within five days does not demonstrate that he was prevented from exhausting his administrative remedies. In that grievance form, plaintiff addressed a different claim from that raised here. In addition, plaintiff waited only five days before concluding that his efforts to obtain relief from Lt. Hollifield were futile.