Matthew DONAHUE, Plaintiff,

v.

BILL PAGE TOYOTA, INC., and First Virginia Credit Services, Inc., Defendants.

No. CIV. A. 01–1081–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 5, 2001.

Alexander Hugo Blankingship, III, Blankingship & Associates P.C., Alexandria, VA, for Plaintiff.

Jack David Lapidus, MacLeay, Lynch, Gregg & Lynch P.C., Washington, D.C., (for Bill Page Toyota, Inc.), Mark Lightner Booz, First Virginia Banks, Inc., Falls Church, (for First Virginia Credit Services, Inc.), for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This warranty and fraud action grows out of the sale of a used car. Specifically, when plaintiff learned that the malfunctioning used Honda he had purchased from defendant Bill Page Toyota, Inc. ("Page Toyota") had previously been sold for salvage as flood damaged, he brought this federal action, alleging a claim under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act[1] ("MMWA") and several pendent state claims. Defendants' threshold dismissal motion presents the question—unresolved in this circuit—whether the MMWA's $50,000 federal amount-in-controversy requirement may be satisfied by aggregating the damages sought in the related pendent state claims with the damages recoverable in the MMWA claim.

### I.

On March 26, 1998, plaintiff, a Virginia resident, purchased a used 1994 Honda Accord for a total price[2] of $13,554 from Page Toyota in Falls Church, Virginia. He made a cash down payment of $1,500 and financed the remainder with a loan from co-defendant First Virginia Credit Services, Inc. ("First Virginia"). Plaintiff alleges that the Honda was offered at a price below that of comparable cars on the lot and, when plaintiff asked about this discrepancy, he was assured by the salesman that the car was in good condition and had no history of problems. Indeed, an advertisement attached to the car at time of sale stated: "This vehicle has passed

---

1. 15 U.S.C. § 2301 et seq.

2. The total purchase price included applicable tax, title, and processing fees.

the pre-inspection and may qualify for extended warranties and service plans." Ultimately, the sale included a 2–month/2,000 mile express warranty on the engine, transmission, and drive axle.

After plaintiff began driving the car, he discovered it had a number of problems, including rust, oil leaks, and problems with the struts, door locks, and transmission. This moved him to investigate the Honda's history through the Car Fax vehicle history service. As a result, he discovered that New Jersey had issued a "salvage title" for the car in October 1997, indicating the car had incurred extensive flood damage. This damage was not reflected in the title plaintiff received from Page Toyota. Accordingly, plaintiff contacted Page Toyota personnel and advised them of the contents of the Car Fax report, after which Page Toyota requested permission to inspect the vehicle.

On September 24, 1999, plaintiff drove the car to Page Toyota and met with a Page Toyota service department employee who was unaware that plaintiff had purchased the car from Page Toyota. The employee inspected the Honda and told plaintiff it had been "rebuilt." Plaintiff then explained that he had purchased the vehicle from Page Toyota, after which the employee abruptly left. A second Page Toyota employee then appeared and inspected the car, telling plaintiff there was nothing wrong with the car and that the "salvage title" must have been the result of insurance fraud. Plaintiff nonetheless demanded rescission of the sale, but Page Toyota refused. So after first filing and nonsuiting a state action against defendants,[3] plaintiff brought this action alleging an MMWA claim and six pendent state claims, including three violations of the Virginia Consumer Protection Act, Va. Code §§ 59.1–200(A)(5), (7), and (14); breach of contract; fraud; and a claim against First Virginia under the FTC Holder Rule.[4]

The MMWA claim is the sole basis for federal jurisdiction in this case. If it appears from the face of the complaint that the MMWA's $50,000 amount-in-controversy requirement for federal jurisdiction is not met, then the claim must be dismissed because no federal question jurisdiction would remain. The six pendent state claims, cognizable only pursuant to the grant of supplemental jurisdiction, 28 U.S.C. § 1367, would also be subject to dismissal without prejudice, for if there is no original jurisdiction, there can be no supplemental jurisdiction.[5]

Plaintiff essentially concedes that the MMWA claim, by itself, involves less than $50,000,[6] but argues nonetheless that the

---

**3.** *See Donahue v. Bill Page Toyota, Inc.*, No. 186848 (Va.Cir.Ct. Jan. 22, 2001) (order of non-suit); *see also* Va.Code § 8.01–380 (allowing plaintiff one elective non-suit).

**4.** Plaintiff's state claims demand relief in the form of (i) rescission of the contract, (ii) unspecified actual damages, (iii) treble damages as allowed by Va.Code § 59.1–204(A), and (iv) punitive damages of $350,000.

**5.** *See* 28 U.S.C. § 1367(a) (extending the grant of supplemental jurisdiction only in cases where the district court has original jurisdiction); *see also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996) ("[S]ince a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal [for lack of subject matter jurisdiction] precludes a district court from exercising supplemental jurisdiction over related state claims.").

**6.** Plaintiff does not contend that his MMWA breach-of-warranty damages reach the $50,000 threshold. And although he seeks costs and attorneys' fees in connection with the MMWA claim, pursuant to 15 U.S.C. § 2310(d)(2), such fees and costs do not count toward the jurisdictional amount, nor does plaintiff argue that they should. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1032–33 (4th Cir.

MMWA's $50,000 amount-in-controversy requirement may be met by aggregating the MMWA damages with the damages sought in the state claims, in which event the total amount in controversy would far exceed the required $50,000. Defendants disagree, arguing that the $50,000 requirement must be met by reference to the MMWA claim alone and that it is impermissible to rely on any amounts in controversy attributable to related state claims. The task at hand is to determine which of these is the correct interpretation of the statute.

## II.

The MMWA provides a cause of action in state or federal court for a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA] or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Yet significantly, the scope of state jurisdiction provided by the MMWA is not congruent with the scope of federal jurisdiction provided; instead, the latter is more limited. In particular, federal court jurisdiction under the MMWA is

limited by 15 U.S.C. § 2310(d)(3), which, in relevant part, provides:

> No claim shall be cognizable in a suit brought [in federal district court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of *all claims to be determined in this suit.*[7] (emphasis added).

This is the provision in issue. Specifically, the question presented is whether this provision permits or precludes adding the damages sought in the related state claims to those sought in the MMWA claim to meet the $50,000 federal jurisdiction threshold.

Because the question presented is one of statutory construction, analysis properly begins with the plain meaning of the statutory language. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).[8] Yet, where the statutory language is ambiguous,[9] Congress's intent concerning the disputed language must be resolved through application of various set-

---

1983) (holding that attorneys' fees are excluded from the calculation of the jurisdictional amount).

**7.** The complete limitation on federal court jurisdiction in the MMWA provides that:

> (3) No claim shall be cognizable in a suit brought [in federal district court]—
> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.
> 15 U.S.C. § 2310(d)(3).

**8.** The meaning of the statutory language must be interpreted in its statutory context. If the

contextual plain meaning is unambiguous, the interpretive task is complete, as the statute must then be applied in accordance with its plain meaning. *See Smith v. United States*, 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Patten v. United States*, 116 F.3d 1029, 1035 (4th Cir. 1997).

**9.** A statute may reasonably be said to be ambiguous when its terms give rise to more than one meaning or interpretation. *See United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994).

tled rules of statutory construction and interpretation, including analysis of the statute's structure and purpose. *See United States v. Jackson*, 759 F.2d 342, 344 (4th Cir.1985); *Johnson v. Garraghty*, 57 F.Supp.2d 321, 326 (E.D.Va.1999).

■ Here, the language in issue is plainly infected with ambiguity. On one hand, the phrase "all claims" in § 2310(d)(3) might be construed to refer to all *federal and state* claims raised by an individual or by multiple plaintiffs in a breach of warranty suit that includes an MMWA claim. On the other hand, "all claims," when viewed in its statutory context, may quite as easily refer only to the *MMWA* claims in the suit, with the plural form of "claims" used to accommodate the possibility of a joinder of parties or a class action. Which of these competing constructions is correct must be determined by reference to the MMWA's purpose and structure.

■ The key to resolving this ambiguity is found in the MMWA's clear purpose and scheme of *limited* federal jurisdiction. Thus, the Act allows all otherwise-qualifying MMWA actions to be brought in state court, but only a subset of such actions is allowed in federal court. This subset is defined in the previously noted § 2310(d)(3), which essentially limits federal MMWA actions to those involving either a single MMWA claim with at least $50,000 in controversy, exclusive of fees and costs, or a class action[10] or joinder of MMWA claims aggregating damages of at least this amount. Put simply, § 2310(d)(3) makes unmistakably clear Congress's rec-

ognition that many typical MMWA claims would likely involve far less than $50,000 and that it is important, as the House Report reflects, to avoid such "trivial or insignificant actions" being brought in the federal courts. H.R.Rep. No. 93–1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7724.[11]

Were the § 2310(d)(3) limitation on federal actions read to allow aggregation of the amounts sought in related state claims, Congress's purpose in crafting the section would be thwarted. No longer would there be any difference between the set of MMWA cases cognizable in state court and those allowed in federal court because virtually all such warranty actions would surely include related state claims, particularly fraud claims, which, if allowed to be aggregated with the federal claim, would easily meet the $50,000 requirement. It follows that Congress's clear intent to limit federal jurisdiction over MMWA claims can be given proper effect only by construing the phrase in § 2310(d)(3)—"all claims to be determined in this suit"—to mean "all *MMWA* claims."

Additional support for this result is apparent from the use of the term "claim" elsewhere in the MMWA. Specifically, the term "claim" appears not just in § 2310(d)(3)(B) on which the analysis has thus far focused, but also in § 2310(d)(3)(A). In subsection (A), it is unmistakably clear that the term "claim" refers only to MMWA claims and not also to related state claims. Given the established canon of statutory construction that "similar language within the same statuto-

---

**10.** Class actions must comply with the additional requirement of no fewer than 100 named plaintiffs. *See* 15 U.S.C. § 2310(d)(3)(C).

**11.** The significant degree to which Congress intended to restrict federal MMWA jurisdiction is well illustrated by comparing the $50,000 MMWA requirement with the

$10,000 amount in controversy required for diversity jurisdiction when the MMWA was enacted in 1974. *See* Judicial Improvements and Access to Justice Act § 201(a), Pub.L. No. 100–702, 102 Stat. 4642 (1988) (increasing the required amount in controversy for diversity jurisdiction to $50,000 from $10,000).

ry section must be accorded a consistent meaning,"[12] the term "claim" must be given the same meaning in subsection (B) as it has in subsection (A), namely, it must be read as referring only to MMWA claims. When so read, it is clear that subsection (B) does not permit damages sought in related state claims to be considered in determining whether a complaint meets the MMWA's $50,000 amount-in-controversy requirement for federal jurisdiction.

Yet additional support for this result derives from its consistency with the rule that federal courts have discretion to decline to hear pendent state law claims. *See* 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hinson v. Norwest Fin. S.C., Inc.,* 239 F.3d 611, 616 (4th Cir.2001). Since consideration of pendent state claims is in many cases discretionary, it follows that damages alleged under those claims should not be used to confer jurisdiction under the MMWA in the absence of a clear congressional statement to the contrary. It would be nonsensical for a pendent state claim to be used to confer jurisdiction when a court could choose to decline to hear that claim.

Authority is sparse on the question whether damages sought in pendent state claims may be considered for the purpose of meeting the MMWA's $50,000 federal jurisdiction requirement. The Fourth Circuit has yet to address the issue. But other circuits addressing the issue have arrived at the same result reached here. Both the Fifth and Eleventh Circuits have ruled, without extended discussion, that the amount in controversy for purposes of § 2310(d)(3)(B) does not include damages arising from pendent state law claims brought by the plaintiff. *See Ansari v.*

*Bella Auto. Group., Inc.,* 145 F.3d 1270, 1272 (11th Cir.1998); *Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1071 & n. 19 (5th Cir.1984). The parties cite no contrary authority nor has any been found.

In sum, Congress's purpose and intent to limit the set of MMWA cases cognizable in federal court can be given proper effect only if the ambiguous phrase "all claims to be determined in this suit" is read to mean "all *MMWA* claims ...." Thus, damages sought in pendent state claims may not be considered in determining whether the MWMA's $50,000 requirement for federal jurisdiction is met. Given this, it follows that the instant MMWA claim does not meet this requirement and must be dismissed.[13] It further follows, because the parties are not diverse, that plaintiff's pendent state claims must also be dismissed for lack of jurisdiction.

---

**12.** *Nat'l Credit Union Admin. v. First Nat'l. Bank & Trust Co.,* 522 U.S. 479, 481, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998).

**13.** This dismissal is without prejudice to the plaintiff's right to pursue the MMWA claim in state court.