**Barry HALL, Plaintiff,**

v.

**K. McCOY, John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, and John Doe # 5, Defendants.**

**No. CIV. A. 7:99–CV–0039.**

United States District Court, W.D. Virginia, Roanoke Division.

Feb. 16, 2000.

Barry Hall, Pound, Pro se.

Christopher Garrett Hill, Office of the Attorney General, Richmond, VA, for K. McCoy, Sgt., defendant.

## MEMORANDUM OPINION

WILSON, Chief Judge.

*Pro se* plaintiff Barry Hall ("Hall"), an inmate at Red Onion State Prison in Pound, Virginia, brings this action against K. McCoy ("McCoy") and John Does # 1–5, correctional officers at Red Onion (collectively, the "officers"), pursuant to 42 U.S.C. § 1983. Hall alleges that the officers subjected him to excessive force in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and seeks monetary damages.[1] The officers move pursuant to Federal Rule of Civil Procedure 12(b) to dismiss the action on the ground that Hall failed to exhaust his administrative remedies pursuant to the exhaustion requirement of the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"). *See* 42 U.S.C. § 1997e(a). For reasons stated below, the court grants the officers' motion and dismisses the case without prejudice.

---

1. Hall also seeks a declaratory judgment stating that the defendants' conduct constituted violations of the Eighth and Fourteenth Amendments. The court dismisses this claim outright. The claim relates entirely to alleged violations that occurred in the past and there is no possibility of future liability arising from those alleged violations once Hall's claim for damages is resolved. Hall's request for declaratory relief serves no useful purpose in clarifying and settling the legal relations between the parties. *See* Wright & Miller, Federal Practice and Procedure, Civil 3d § 2759 (1998) (a court may, in its discretion, dismiss a claim for declaratory relief where "there is no need for the declaration.").

## I.

Since this matter raises essentially procedural questions, only a short summary of the facts alleged by Hall is necessary. In the early morning of January 6, 1999, Hall was placed in the B–4 recreational yard at Red Onion for a one-hour period of recreation. Upon entering the yard, Hall was accosted by another inmate and the two began to fight. An unknown correctional officer observed the fight, fired a warning shot, and verbally ordered Hall and his counterpart to lie on the ground. Both inmates complied with the order and the fight ended. A number of officers then arrived at the yard and McCoy ordered Hall toward the recreation yard door. When Hall reached the door, several officers handcuffed and leg-shackled him. After he was shackled, McCoy told the officers, "this is the second time that we have had to shoot at this son of a bitch .... Take him to his cell and deal with him." At that time several officers shoved Hall face-first into a cement wall, and another officer struck Hall in the side of his head with an open hand, driving Hall's head into the wall. Several officers then dragged Hall up a flight of steel stairs to Hall's cell, and upon arriving at the cell, the officers pinned Hall to his bed with Hall's head and neck twisted awkwardly underneath his body. As a result of the officers' conduct, Hall suffered extreme pain, various minor injuries, and emotional distress.

Red Onion has a grievance procedure for inmates who have complaints against correctional officers. The grievance procedure does not, however, allow for money awards to successful claimants. Hall filed his complaint in this court on June 4, 1999, and has not availed himself of the Red Onion grievance procedure.

## II.

This case presents two questions, both unresolved in this circuit: (1) whether 42 U.S.C. § 1997e(a), which requires prisoners bringing action "with respect to prison conditions" under § 1983 to exhaust administrative remedies, applies to claims of excessive force; and if so, (2) whether such remedies must be exhausted even if the prisoner seeks only monetary damages and the administrative remedy does not provide for monetary relief. The court finds that § 1997e(a) applies to excessive force claims, and that Hall must exhaust his administrative remedies even though the Red Onion prison grievance procedure is incapable of offering him monetary relief. The court will consider the questions of exhaustion and futility separately.

## A.

Section 1997e(a) was enacted as part of the PLRA, and provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Hall contends that the phrase "with respect to prison conditions" does not extend to allegations of excessive force. Neither the Supreme Court not any circuit has considered this question, and the district courts that have addressed it are divided, some finding that § 1997e(a) contemplates excessive force claims[2] and others holding to the contrary.[3]

 Since this question is one of statutory construction, analysis properly begins with the plain meaning of the stat-

---

**2.** See Cruz v. Jordan, 80 F.Supp.2d 109, 112–17 (S.D.N.Y.1999); Johnson v. Garraghty, 57 F.Supp.2d 321, 325–28 (E.D.Va.1999); George v. C.O. Lorenzo, 1999 WL 397473, at *2 (S.D.N.Y. June 15, 1999); Beeson v. Fishkill Correctional Fac., 28 F.Supp.2d 884, 888–92 (S.D.N.Y.1998); Moore v. Smith, 18 F.Supp.2d 1360, 1363 (N.D.Ga.1998); Morgan v. Arizona Dep't. of Corrections, 976 F.Supp. 892, 895–96 (D.Ariz.1997).

**3.** See Wright v. Dee, 54 F.Supp.2d 199, 203–04 (S.D.N.Y.1999); Carter v. Kiernan, 1999 WL 14014, at *5 (S.D.N.Y.Jan.14, 1999); Baskerville v. Goord, 1998 WL 778396, at *3 (S.D.N.Y. Nov. 5, 1998); White v. Fauver, 19 F.Supp.2d 305, 313–15 (D.N.J.1998); Johnson v. O'Malley, 1998 WL 292421, at *3 (N.D.Ill. May 19, 1998); Rodriguez v. Berbary, 992 F.Supp. 592, 592–93 (W.D.N.Y.1998).

utory language; if the plain meaning is unambiguous, the court's task is finished and the statute must be applied according to its plain meaning. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *Patten v. United States*, 116 F.3d 1029, 1035 (4th Cir.1997). However, if the operative statutory language is ambiguous, the court must refer to the statute's "legislative history, prior interpretations, related statutes, and the underlying congressional purpose and public policy considerations" to ascertain its purpose. *United States v. Jackson*, 759 F.2d 342, 344 (4th Cir.1985).

■ The text of § 1997e(a) does not itself provide an answer to this question. Although the plain meaning of the phrase "prison conditions" can be understood to encompass excessive force claims, *see Johnson v. Garraghty*, 57 F.Supp.2d at 326, a number of courts have interpreted the phrase to refer only to "medical treatment, food, clothing, and the nature and circumstances of the housing available in prison." *Carter*, 1999 WL 14014, at *3. *See also Wright*, 54 F.Supp.2d at 203–04; *Baskerville*, 1998 WL 778396, at *3; *White*, 19 F.Supp.2d at 313–15; *Johnson*, 1998 WL 292421, at *3; *Rodriguez*, 992 F.Supp. 592 at 592–93. The court concludes that the language of of § 1997e(a) is facially ambiguous, a decision buttressed by the split between the district courts that have addressed this question. The court must therefore look to secondary sources to determine the text's meaning.

■ Section 1997e does not define "prison conditions." However, § 3636(g)(2) of Title 18, enacted as part of the PLRA to address suits by prisoners for injunctions and other forms of prospective relief, defines the phrase "civil actions with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison ...." 18 U.S.C. § 3636(g)(2). A natural reading of this definition clearly encompasses excessive force claims as "effects of actions by government officials" on the lives of prisoners. This definition applies with equal force in interpreting the phrase "prison conditions" in § 1997e(a), since it is a "well-established canon of statutory construction that words have the same meaning throughout a given statute." *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1350 (11th Cir.1997); *see Russo v. Trifari, Krussman, & Fishel, Inc.*, 837 F.2d 40, 45 (2d Cir.1988) ("Construing identical language in an single statute *in para materia* is both traditional and logical.").

This interpretation of § 1997e(a) finds further support in the legislative history and overall purpose of the PLRA. A review of the legislative history surrounding the PLRA indicates that "Congress was primarily concerned about the rising number of lawsuits filed by prisoners and the perception that most of these suits were frivolous." *Cruz*, 80 F.Supp.2d at 113.[4] A

---

4. The court recognizes the imprecision inherent in searching for the collective "intent" of over 500 members of Congress. However, after review of the debates and reports surrounding the PLRA, the court agrees with *Cruz* that the legislative history in this case indicates a clear intent on the part of those members of Congress most closely involved in the passage of the PLRA to curtail the number of frivolous prisoner lawsuits. *See, e.g.,* 141 Cong. Rec. S14408–01, *S14414 (daily ed. Sept. 27, 1995) (statement of Senator Dole) (noting that prisoner suits increased from 6,600 in 1975 to over 39,000 in 1994 and included claims for "insufficient storage locker space, a defective haircut by a prison bar-

ber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and ... being served chunky peanut butter instead of the creamy variety."); 141 Cong. Rec. S7498–01, *S7526 (daily ed. May 25, 1995) (statement of Senator Kyl) (citing that in 1994, prisoners brought more than one-fourth of all civil suits filed in the United States District Courts); Bernard D. Reams, Jr. & William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996*, Pub.L. No. 104–134, 110 Stat. 1321, Doc. 33, at 61 (noting that the short title given to the House measure containing the PLRA was "Stopping Abusive Prisoner Lawsuits").

broad, mandatory administrative exhaustion requirement effectuates the principal goal of the PLRA by relieving the judiciary of the burden of addressing frivolous excessive force claims. Additionally, requiring exhaustion will render less burdensome those excessive force cases which do reach the district courts, since the prison grievance system will have produced preliminary fact-findings and an organized record,[5] and an absolute exhaustion requirement is "particularly sensible because excessive force claims typically come packaged … with other, related claims indisputably subject to § 1997e(a)." *Johnson v. Garraghty,* 57 F.Supp.2d at 327. To allow a prisoner to bring an excessive force claim directly to district court while directing the prisoner's other, related claims to a prison grievance procedure would unnecessarily bifurcate and complicate the litigation process—precisely the outcome that the PLRA was designed to forestall.

Courts that have interpreted § 1997e(a) to exclude excessive force claims have relied principally on two justifications, both of which this court finds unpersuasive. First, the courts cite to an earlier version of the PLRA which provided in relevant part:

> [I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interest of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

In addition to providing the district court with discretion in determining whether to require administrative exhaustion, this language also differs from the present version of § 1997e(a) in that it does not include the phrase "with respect to prison conditions." Some courts have drawn from the addition

of this language into the present § 1997e(a) that Congress reduced the scope of the statute, and therefore that including excessive force claims in the current statute would not give a "real and substantial effect" to the amendment. *White,* 19 F.Supp.2d at 314. The fact that Congress limited the scope of § 1997e(a) to actions brought "with respect to prison conditions" does not necessarily mean, however, that excessive force claims are the subset of cases to be excluded. The excluded subset of cases could include only, for instance, actions relating to matters before imprisonment or actions unrelated to imprisonment. This latter interpretation would give "real and substantial effect" to the textual changes in the amended § 1997e(a) and would better comport with the overall purpose of the PLRA.

Courts interpreting § 1997e(a) to exclude excessive force cases have also cited two Supreme Court decisions which draw distinctions between conditions of confinement and excessive force claims. *See, e.g., White,* 19 F.Supp.2d at 314–15. In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court stated:

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation .... In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated."

*Hudson,* 503 U.S. at 8–9, 112 S.Ct. 995 (quotations, citations omitted). This distinction was reiterated in *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128

---

5. This consideration was noted by at least one member of Congress in the House debates on the PLRA. *See* 141 Cong. Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995) (statement

of Congressman LoBiondo) (noting that the administrative process at the prison level could assist the courts in fact-finding and focusing issues).

L.Ed.2d 811 (1994). These cases, however, stand only for the proposition that courts should apply different standards to determine when cases of excessive force and inhumane conditions of confinement have been established. To say that the two are different types of cases, however, does not lead to the conclusion that the phrase "prison conditions" in § 1997e(a) contemplates one but not the other. Whereas *Hudson* and *Farmer* define and distinguish between the substantive merits of "prison condition" cases, § 1997e(a) is an overarching procedural requirement, encompassing excessive force and conditions of confinement cases alike.

The court therefore finds that, given the definition of "prison conditions" in § 3636(g)(2) and the legislative history of the PLRA, claims of excessive force fall within the scope of the § 1997e(a) exhaustion requirement.

### B.

■ The Supreme Court and the Fourth Circuit have not considered whether a prisoner who seeks only monetary damages must exhaust administrative remedies pursuant to § 1997e(a) even when the available administrative remedy does not provide for monetary relief. The circuit courts that have considered the question are split.[6] This court finds that exhaustion is required even where the administrative process does not provide for monetary relief.

Once again, the first step for analysis is the statutory text. Hall emphasizes the phrase "such administrative remedies *as are available*," 42 U.S.C. § 1997e(a) (emphasis added), arguing that because his preferred remedy is not "available" through the prison grievance procedure, § 1997e(a) does not require exhaustion.

This interpretation is initially suspect because it would essentially allow prisoners to "avoid the administrative process by the simple expedient of asking for monetary damages, a loophole the [PLRA] does not appear to allow." *Wyatt,* 193 F.3d at 878. The interpretation would also sacrifice the simplicity of the PLRA, and instead of requiring exhaustion of administrative remedies it would "require courts to evaluate each cause of action and each type of relief sought in each prisoner's complaint and determine whether the [administrative process] can grant any adequate relief." *Alexander,* 159 F.3d at 1326.

On its face, the text of § 1997e(a) does not support Hall's position. "[T]he statutory question is whether any 'remedies' are 'available'; § 1997e(a) does not require the prison to use the prisoner's preferred remedy." *Perez,* 182 F.3d at 537. So long as the prison grievance procedure available at Red Onion offers some remedy—such as, for instance, structural changes or disciplinary action against the offending officers—the procedure would still fall within the parameters of § 1997e(a). In addition, comparison between the text of the current § 1997e(a) and its pre-PLRA predecessor indicates an absolute exhaustion requirement. The earlier version permitted a court to continue a case "for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available." In 1996, Congress deleted the requirement that the administrative remedy be "plain, speedy, and effective." When these words left the statute, "so did any warrant to inquire whether exhaustion would be unavailing." *Perez,* 182 F.3d at 537. *See also Alexander,* 159 F.3d at 1326 (the amended § 1997e(a) indicates that "Congress no

6. Cases finding exhaustion necessary: *Wyatt v. Leonard,* 193 F.3d 876, 878–80 (6th Cir. 1999); *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 534–38 (7th Cir.1999); *Alexander v. Hawk,* 159 F.3d 1321, 1325–28 (11th Cir.1998) (*dictum* ); *Contra Rumbles v. Hill,* 182 F.3d 1064, 1067–68 (9th Cir.1999); *Lunsford v. Jumao–As,* 155 F.3d 1178, 1179 (9th Cir.1998); *Whitley v. Hunt,* 158 F.3d 882, 885–87 (5th Cir.1998); *Garrett v. Hawk,* 127 F.3d 1263, 1264–66(10th Cir.1997). Numerous district courts outside these circuits have also considered this question, and are equally split. *See Langford v. Couch,* 50 F.Supp.2d 544, 547 fn. 9 (E.D.Va.1999) (listing cases).

longer wanted courts to examine the effectiveness of administrative remedies").

■ The amended § 1997e(a) effectively removes the futility doctrine from the court's analysis. The Supreme Court has recognized that "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).[7] Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply. *Weinberger v. Salfi*, 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement . . . may not be dispensed with merely by a judicial conclusion of futility").

As a final consideration, the characterization of administrative referral in this case as "futile" ignores one of the critical values of § 1997e(a). The record in cases brought by prisoners, who are typically proceeding *pro se*, are often incomplete and require clarification before the court can understand and rule on the issues. In the absence of administrative guidance, this clarification is achieved through a time- and resource-consuming process of court orders and party responses. As noted above, administrative review will produce preliminary findings of fact and a record developed in close proximity to the time of the alleged incident giving rise to the suit, which is of value to the district court in comprehending the underlying factual and issues and therefore resolving the matter quickly and efficiently. Although a prisoner seeking monetary damages may very well view the prison grievance process as a useless exercise, it is the value of that exercise to the judicial system, and not to the prisoner, that the PLRA was largely designed to effectuate.

## III.

■ For the reasons stated above, the court dismisses Hall's claim without prejudice.[8]

---

**7.** Two circuit courts have relied upon *McCarthy* in holding that prisoners seeking monetary damages need not exhaust administrative remedies that do not provide such relief. *See Whitley*, 158 F.3d at 886; *Rumbles*, 182 F.3d at 1068. The *McCarthy* court, interpreting the pre-PLRA version of § 1997e(a), held that exhaustion was unnecessary when the plaintiff sought only money damages, because the Bureau of Prisons did not award money in administrative proceedings. However, the Court also specifically noted that its conclusion depended on the absence of a statutory exhaustion requirement for federal prisoners, even though § 1997e required exhaustion by some state prisoners. *See McCarthy*, 503 U.S. at 149–150, 112 S.Ct. 1081. As the Seventh Circuit noted in *Perez:* "The PLRA altered the landscape. Exhaustion now is required for both state and federal prisoners, and the requirement that the administrative remedy be 'plain, speedy, and effective' has been deleted." *Perez*, 182 F.3d at 537.

**8.** Hall has requested that the court place this case on hold for ninety days while Hall exhausts his administrative remedies. Section 1997e(a) provides, however, that "[n]o action shall be brought" until administrative remedies are exhausted—exhaustion is a precondition to filing suit, not a precondition to judgment. Consequently, this court is without power to stay the matter pending its disposition in the prison grievance system. Since the case is dismissed without prejudice, Hall is free to file suit in this court again once he has exhausted his administrative remedies, should those remedies fail to satisfy his claims.