736 S.E.2d 242

M. Lee JENNINGS, Respondent,

v.

Gail M. JENNINGS, Holly Broome, Brenda Cooke, Individually and BJR International Detective Agency, Inc., of whom Holly Broome is, Petitioner.

No. 27177.

Supreme Court of South Carolina.

Heard Oct. 18, 2011.
Decided Oct. 10, 2012.

Gary W. Popwell, Jr., of Lee Eadon Isgett & Popwell, of Columbia, for Petitioner.

Max N. Pickelsimer and Carrie A. Warner, both of Warner, Payne & Black, of Columbia, for Respondent.

Justice HEARN.

Holly Broome was sued civilly for hacking Lee Jennings' Yahoo! e-mail account. The circuit court granted summary judgment in favor of Broome on all claims, including violation of the federal Stored Communications Act (SCA), 18 U.S.C. §§ 2701–12. The court of appeals reversed, finding that the e-mails she obtained from hacking Jennings' account were in electronic storage and thus covered by the SCA. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

The computer hacking at issue here emanated from a domestic dispute. After finding a card for flowers for another woman in her husband's car, Gail Jennings confronted him. Jennings confessed he had fallen in love with someone else, and although he refused to divulge her name, he admitted the two had been corresponding via e-mail for some time. Gail confided this situation to her daughter-in-law, Holly Broome.[1] Broome had previously worked for Jennings and knew he maintained a personal Yahoo! e-mail account. She thereafter accessed his account by guessing the correct answers to his security questions and read the e-mails exchanged between Jennings and his paramour. Broome then printed out copies of the incriminating e-mails and gave them to Thomas Neal, Gail's attorney in the divorce proceedings, and Brenda Cooke, a private investigator Gail hired.

When Jennings discovered his e-mail account had been hacked, he filed suit against Gail, Broome, and Cooke, individually and as shareholder of BJR International Detective Agency, Inc., for invasion of privacy, conspiracy, and violations of the South Carolina Homeland Security Act, South Carolina Code Ann. § 17–30–135 (2010). He later amended his complaint to include an allegation that the defendants violated the SCA. Jennings also moved to add Neal as a defendant. The circuit court denied this motion and granted summary judgment in favor of the defendants on all claims, including the allegations under the SCA. Jennings appealed. The court of appeals affirmed the grant of summary judgment as to Gail, Cooke, and BJR. *Jennings v. Jennings*, 389 S.C. 190, 209, 697

---

1. Broome is married to Gail's son from a previous marriage.

S.E.2d 671, 681 (Ct.App.2010). However, the court reversed the circuit court's grant of summary judgment in favor of Broome only as to the SCA claim, finding that the e-mails at issue were in "electronic storage" as defined in 18 U.S.C. § 2510(17). *Id.* at 198–208, 697 S.E.2d at 675–680. We granted certiorari.

## ISSUE PRESENTED

Did the court of appeals err in reversing the circuit court's grant of summary judgment because the e-mails in question were not in "electronic storage" as defined by 18 U.S.C. § 2510? [2]

## LAW/ANALYSIS

In arguing the court of appeals erred by holding the e-mails were in electronic storage, Broome contends the court misunderstood the definition of electronic storage under the Act and incorrectly concluded the e-mails had been stored for the purpose of backup protection. We agree.

 "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). "Statutory construction must begin with the language of the statute." *Kofa v. U.S. Immigration & Naturalization Serv.,* 60 F.3d 1084, 1088 (4th Cir.1995). "In interpreting statutory language, words are generally given their common and ordinary meaning." *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen,* 152 F.3d 283, 288 (4th Cir.1998). Where the language of the statute is unambiguous, the Court's inquiry is over, and the statute must be applied according to its plain meaning. *Hall v. McCoy,* 89 F.Supp.2d 742, 745 (W.D.Va. 2000).

Under section 2701(a) of the SCA, anyone who:

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

---

2. The definitions of section 2510 pertaining to the Wiretap Act are incorporated into the SCA. 18 U.S.C § 2711(1).

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a). This section thus proscribes the unauthorized accessing of an electronic communication while it is in "electronic storage." The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for the purposes of backup protection of such communication." 18 U.S.C. § 2510(17). For Jennings to succeed in his claim against Broome under the SCA, he must prove the e-mails she accessed were in electronic storage as defined in section 2510(17). His argument in this regard extends only to subsection (B) of the Act; Jennings has never argued that the e-mails in questions were in electronic storage pursuant to subsection (A).

The court of appeals agreed with Jennings and held the e-mails were in "electronic storage" because they were stored for backup protection pursuant to subsection (B). Broome argues this conclusion was based upon an improper interpretation of section 2510(17), asserting that the definition of "electronic storage" within the SCA requires that it must be both temporary and intermediate storage incident to transmission of the communication *and* storage for the purposes of backup protection. She therefore contends that an e-mail must meet both subsection (A) and subsection (B) to be covered by the SCA. We acknowledge that this reading is the interpretation espoused by the Department of Justice as the "traditional interpretation" of section 2510(17). However, it has been rejected by the majority of courts in favor of a construction that an e-mail can be in electronic storage if it meets either (A) *or* (B). *See, e.g., Theofel v. Farey–Jones,* 359 F.3d 1066, 1075 (9th Cir.2004); *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 114 (3d Cir.2003), *aff'g in part, vacating in part, and remanding* 135 F.Supp.2d 623 (E.D.Pa.2001); *Strategic Wealth Group, LLC v. Canno,* No. 10–0321, 2011 WL 346592, at *3–4 (E.D.Pa. Feb. 4, 2011); *Cornerstone Consultants, Inc.*

*v. Prod. Input Solutions, LLC,* 789 F.Supp.2d 1029, 1055 (N.D.Iowa 2011); *Shefts v. Petrakis,* No. 10–cv–1104, 2011 WL 5930469, at *5 (C.D.Ill. Nov. 29, 2011); *Crispin v. Christian Audigier, Inc.,* 717 F.Supp.2d 965, 983 (C.D.Cal.2010); *U.S. v. Weaver,* 636 F.Supp.2d 769, 771 (C.D.Ill.2009); *Flagg v. City of Detroit,* 252 F.R.D. 346, 362 (E.D.Mich.2008). Because Jennings has only argued his e-mails were in electronic storage pursuant to subsection (B), it is unnecessary for us to determine whether to adopt the traditional interpretation advocated by the Department of Justice or the interpretation recognized by these cases. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter.").

In finding the e-mails were stored for "purposes of backup protection" and thus subject to subsection (B), the court of appeals relied heavily on *Theofel,* a case from the United States Court of Appeals for the Ninth Circuit. In *Theofel,* Integrated Capital Associates (ICA) was involved in commercial litigation with Farey–Jones. *Theofel,* 359 F.3d at 1071. Counsel for Farey–Jones subpoenaed ICA's internet service provider, NetGate, for the production of all e-mails sent or received by anyone at ICA "with no limitation as to time or scope." *Id.* NetGate complied as well as it could with such a voluminous request, but when ICA discovered this disclosure it filed a motion to quash the subpoena and requested the imposition of sanctions. *Id.* Additionally, several of the employees whose e-mails had been delivered by NetGate filed a civil suit against Farey–Jones for, *inter alia,* violations of the SCA in gaining unauthorized access to communications in electronic storage. *Id.* The court in *Theofel* held that ICA's e-mails which had been received and read, and then left on the server instead of being deleted, could be characterized as being stored "for purposes of backup protection" and therefore kept in electronic storage under subsection (B). *Id.* at 1075. We question the reasoning expressed in *Theofel* that such passive inaction can constitute storage for backup protection under the SCA; however, because we believe the plain language of subsection (B) does not apply to the e-mails in question, we reverse the conclusion of the court of appeals that they were in electronic storage under *Theofel.*

■■ After opening them, Jennings left the single copies of his e-mails on the Yahoo! server and apparently did not download them or save another copy of them in any other location. We decline to hold that retaining an opened email constitutes storing it for backup protection under the Act. The ordinary meaning of the word "backup" is "one that serves as a substitute or support." Merriam–Webster Dictionary, *http://www.merriam-webster.com/dictionary/backup*. Thus, Congress's use of "backup" necessarily presupposes the existence of another copy to which this e-mail would serve as a substitute or support. We see no reason to deviate from the plain, everyday meaning of the word "backup," and conclude that as the single copy of the communication, Jennings' e-mails could not have been stored for backup protection.

Accordingly, we find these e-mails were not in electronic storage. We emphasize that although we reject the contention that Broome's actions give rise to a claim under the SCA, this should in no way be read as condoning her behavior. Instead, we only hold that she is not liable under the SCA because the e-mails in question do not meet the definition of "electronic storage" under the Act.

## CONCLUSION

Based on the foregoing, we reverse the court of appeals' opinion and reinstate the circuit court's order granting summary judgment in favor of Broome.

KITTREDGE, J., concurs. TOAL, C.J., concurring in result in a separate opinion in which BEATTY, J., concurs. PLEICONES, J., concurring in result in a separate opinion.

Chief Justice TOAL.

I concur in result, but write separately to express my concern with Justice Hearn's adoption of the approach taken in *United States v. Weaver*, 636 F.Supp.2d 769 (C.D.Ill.2009). I believe the "traditional interpretation" of the Stored Communications Act (SCA), 18 U.S.C. §§ 2701–12 (2000 & Supp. 2011), advanced by the Department of Justice (DOJ), coupled with the fact that Congress never contemplated this new form of technology, provide a sounder basis to reach our decision.

In *Weaver,* the court addressed the government's subpoena of e-mails in a defendant's Hotmail account and whether the e-mails were in "electronic storage," a determination which would dictate whether the government would need to obtain a warrant for the e-mails or whether a trial subpoena was sufficient. 636 F.Supp.2d at 769–71. *Weaver* held that courts may issue a trial subpoena to compel internet service providers (ISPs) to produce the content of opened e-mails stored by a website provider for 180 days or fewer because such e-mails are not in "electronic storage." *Id.* at 771–73. *Weaver* relied on dicta found in *Theofel v. Farey–Jones,* 359 F.3d 1066 (9th Cir.2004), to conclude that *Theofel*'s holding applies only to e-mail systems where users download messages from the ISP's server onto their computers, and that e-mails stored in the cloud should not be considered stored for backup purposes. *Id.* at 772. Similar to *Weaver,* Justice Hearn concludes here that because Jennings left his e-mails on the Yahoo! Server and apparently did not download them from the server or retain a copy of them in any other location, the emails could not be held for "backup protection" within the meaning of the statute.

Justice Hearn relies on the Merriam–Webster Dictionary to argue that the definition of "backup" requires that there must be more than one copy of the email. The exact definition of "backup" varies from dictionary to dictionary. *See, e.g., Webster's Third International Dictionary, Unabridged* 120 (3rd ed.2002). Assuming for the sake of analysis that the definition of "backup" is "one that serves as a substitute *or support,*" as Justice Hearn contends, this definition would suggest that an email message on an ISP's server could be stored for *support* in the event that the user needs to retrieve it. As such, even if there is no second copy, the email could still constitute "backup protection."

Nevertheless, even if I could interpret "backup" in this matter, in a statute such as this, I am reluctant to read the word "backup" in isolation, but instead the phrase "backup protection" should be viewed in a statutory and historical context. As Professor Kerr explains:

> An understanding of the structure of the SCA indicates that the backup provision of the definition of electronic storage, see id. § 2510(17)(B), exists only to ensure that the govern-

ment cannot make an end-run around the privacy-protecting ECS rules by attempting to access backup copies of unopened e-mails made by the ISP for its administrative purposes. ISPs regularly generate backup copies of their servers in the event of a server crash or other problem, and they often store these copies for the long term. Section 2510(17)(B) provides that backup copies of unopened e-mails are protected by the ECS. . . .

There are many statutory signals that support this reading. Several were raised by the United States as amicus and rejected by the *Theofel* court, see *Theofel,* 359 F.3d at 1076–77, but a host of other arguments remain. I think the most obvious statutory signal is the text of 18 U.S.C. § 2704, entitled "Backup Preservation." See 18 U.S.C. § 2704 (2000). Section 2704 makes clear that the SCA uses the phrase "backup copy" in a very technical way to mean a copy made by the service provider for administrative purposes. See id. The statutory focus on backup copies in the SCA was likely inspired by the 1985 Office of Technology Assessment report that had helped inspire the passage of the SCA. See Office of Tech. Assessment, Federal Government Information Technology: Electronic Surveillance and Civil Liberties (1985). The report highlighted the special privacy threats raised by backup copies, which the report referred to as copies "[r]etained by the [e]lectronic [m]ail [c]ompany for [a]dministrative [p]urposes." Id. at 50.

Orin Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L.Rev. 1208, 1217 n. 61 (2004); *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F.Supp.2d 548, 555 (S.D.N.Y.2008) ("The majority of courts which have addressed the issue have determined that e-mail stored on an electronic communication service provider's systems after it has been delivered, as opposed to e-mail stored on personal computer, is a stored communication subject to the SCA.") (citations omitted).

Furthermore, I am concerned that Justice Hearn's position on "backup protection" potentially leads to illogical results. *Weaver,* itself, concluded that the outcome would be different if a Hotmail user "opt[ed] to connect an e-mail program, such as Microsoft Outlook, to his or her Hotmail account and

through it download[ed] messages onto a personal computer." *Id.* Under *Weaver's* rule, the privacy protections of personal e-mail are contingent upon the operation of the e-mail system used.[3] It is not necessary for this Court to rely on *Theofel* dicta, which would lead us down the precarious path of saying that if one uses Microsoft Outlook for e-mail, one will be protected, but if one uses Yahoo! Mail for e-mail, there is no protection. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) (holding "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *see also Hodges v. Rainey*, 341 S.C. 79, 91, 533 S.E.2d 578, 584 (2000) (citation omitted) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature . . . .").

Instead, I advocate a rejection of *Theofel* entirely and the adoption of the "traditional interpretation" of the SCA, which tracks the statutory language and comports with legislative history. *Prosecuting Computer Crimes*, DOJML Comment 9–3.000, 5 Department of Justice Manual (Supp.2011–13) [*hereinafter* DOJML Comment 9–3.000]; *see also* Kerr, *supra*, at

---

3. *Theofel* stated in dicta, "A remote computing service might be the only place a user stores his messages; in that case, the messages are not stored for backup purposes." 359 F.3d at 1077. Relying on this, *Weaver* distinguished *Theofel* and claimed that it does not apply to web-based e-mail services where e-mails are stored in the cloud. 636 F.Supp.2d at 771–73. Nevertheless, being stored in the cloud just means that the e-mails are stored on a Yahoo Mail server. *See Accessing Yahoo! Mail* (March 8, 2012), *available at* www. help.yahoo.com/tutorials/. The distinction between being stored on a Yahoo! Mail Server and being stored on the ISP's server in *Theofel* in the context of backup storage is slight in my view. *Compare id. with Theofel*, 359 F.3d at 1070, 1075. In addition, based on its dicta, *Theofel* never explicitly excluded web-based e-mails but spoke of "remote computing service[s]." Some courts, including our court of appeals, have concluded that web-based e-mail services like Yahoo! provide both electronic communication services (ECS) and remote computing service (RCS) making it problematic to rely on *Theofel's* dicta to exclude web-based e-mails as *Weaver* has done. *See, e.g., In re Application of the U.S. for a Search Warrant, for Contents of Elec. Mail and for an Order Directing a Provider of Elec. Commc'n Servs. to Not Disclose the Existence of the Search Warrant*, 665 F.Supp.2d 1210, 1214 (D.Or.2009).

1216–18 (advocating the traditional approach and arguing that "the Ninth Circuit's analysis in [*Theofel*] is quite implausible and hard to square with the statutory text"). Under this approach, the term "electronic storage" has a narrow, statutorily defined meaning. DOJML Comment 9–3.000. It does not simply mean storage of information by electronic means. Rather section 2510(17) provides:

(17) "electronic storage" means—

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; *and*

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

18 U.S.C. § 2510(17) (Supp.2011) (emphasis added).

I disagree with Justice Hearn's position that an e-mail is covered under section 2701(a) of the SCA if it meets the criteria of "either subsection (A) *or* subsection (B)." (emphasis in original). Plainly read, the definition of electronic storage encompasses both subsections A and B. I do not rely on Broome's over-analysis of the word "such" in the phrase "such communication" to reach this conclusion. Rather, I turn to the structure of the statutory text and also to the unambiguous use of the conjunctive "and." Both subsections A and B are subsumed under section 17, which starts out with the phrase " 'electronic storage' means—," suggesting that the definition of electronic storage encompasses both subsections A and B. Furthermore, subsections A and B are connected by the conjunctive "and" indicating that they must be read together. *See Bruesewitz v. Wyeth LLC*, 562 U.S. ——, 131 S.Ct. 1068, 1078, 179 L.Ed.2d 1 (2011) (noting that "linking independent ideas is the job of a coordinating junction like 'and' "). Had Congress intended two alternative definitions for electronic storage then it would have used the disjunctive particle "or" in place of "and." *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."); *K & A Acquisition Group, LLC v. Island Pointe, LLC*, 383 S.C. 563, 580, 682 S.E.2d 252,

261 (2009) (The "use of the word 'or' in a statute 'is a disjunctive particle that marks an alternative.' "). Justice Hearn's approach would delete a word and insert a new one into the statutory text, effectively writing out subsection A from the definition of electronic storage.

Thus, in my view, electronic storage refers only to temporary storage, made in the course of transmission, by an ECS provider, *and* to backups of such intermediate communications. Under this interpretation, if an e-mail has been received by a recipient's service provider but has not yet been opened by the recipient, it is in electronic storage. *Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457, 461 (5th Cir.1994) (holding that e-mail which had been sent to a bulletin board but not read by intended recipients was "in 'electronic storage' "). When the recipient opens the e-mail, however, the communication reaches its final destination. DOJML Comment 9–3.000. If the recipient chooses to retain a copy of the e-mail on the service provider's system, the retained copy is no longer in electronic storage because it is no longer in "temporary, intermediate storage . . . incidental to . . . electronic transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 135 F.Supp.2d 623, 635–36 (E.D.Pa.2001), *aff'd in part* 352 F.3d 107, 114 (3d Cir.2004) (upholding district court's ruling on other grounds); *In re DoubleClick Inc. Privacy Litigation*, 154 F.Supp.2d 497, 511–13 (S.D.N.Y.2001) (emphasizing that electronic storage should have a narrow interpretation based on statutory language and legislative intent and holding that cookies fall outside of the definition of electronic storage because of their "long-term residence on plaintiffs' hard drives").

In this case, the circuit court judge found that the e-mails were "received, opened and read by [Jennings] . . . ." Because the e-mails were already opened by Jennings when they were retrieved and printed out by Broome, they reached their final destination and fell outside the scope of the definition of electronic storage under the statute, which requires the e-mails to be in "temporary, intermediate storage . . . incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17).

Much of the difficulty in applying the SCA to cases such as this arises because of the discrepancy between current tech-

nology and the technology available in 1986 when the SCA was first enacted. When the SCA was enacted, the process of network communication was still in its infancy; the World Wide Web, and the Internet as we know it, did not arrive until 1990. William Jeremy Robison, *Free At What Cost?: Cloud Computing Privacy Under the Stored Communications Act*, 98 Geo. L.J. 1195, 1198 (2010). An examination of how the Senate viewed e-mails in 1986 indicates just how strikingly different the technology was compared to the present:

> Electronic mail is a form of communication by which private correspondence is transmitted over public and private telephone lines. In its most common form, messages are typed into a computer terminal, and then transmitted over telephone lines to a recipient computer operated by an electronic mail company. If the intended addressee subscribes to the service, the message is stored by the company's computer "mail box" until the subscriber calls the company to retrieve its mail, which is then routed over the telephone system to the recipient's computer. If the addressee is not a subscriber to the service, the electronic mail company can put the message onto paper and then deposit it in the normal postal system.

S.Rep. No. 99–541, at 7 (1986). Viewing the statutory language of the SCA in this context, the traditional definition of electronic storage becomes more reasonable. The SCA is ill-fitted to address many modern day issues, but it is this Court's duty to interpret, not legislate. Moreover, I agree with Justice Hearn that it is prudent to limit our analysis to the language before us and give the language its literal meaning. However, I believe doing so requires us to adopt the traditional interpretation of 18 U.S.C. § 2510(17) rather than rely on the reasoning advanced by *United States v. Weaver*. 636 F.Supp.2d at 769–73. Jennings and similarly situated plaintiffs are not foreclosed from seeking redress by alternative theories, but under the SCA, Broome's actions do not give rise to a claim because the e-mails in question do not meet the definition of electronic storage.

BEATTY, J., concurs.

14

Justice PLEICONES.

I concur in result. I agree with Chief Justice Toal that "electronic storage" under the Stored Communications Act (SCA) refers to temporary storage of communications during the course of transmission, 18 U.S.C. § 2510(17)(A), and to backups of those communications, § 2510(17)(B). However, I view these two types of storage as necessarily distinct from one another: one is temporary and incidental to transmission; the other is a secondary copy created for backup purposes by the service provider.[4] Therefore, an e-mail is protected if it falls under the definition of either subsection (A) or (B). It does not end the inquiry to find that the e-mails at issue were not in temporary storage during the course of transmission (subsection (A)). Accordingly, because the e-mails in this case were also not copies made by Jennings's service provider for purposes of backup (subsection (B)), they were not protected by the SCA.[5] I therefore concur in result.

---

4. The "backup" covered by subsection (B) is a copy made by the service provider to back up its own servers. It does not include an original e-mail that has been transmitted to the recipient and remains on the provider's server after the recipient has opened or downloaded it. *See Orin Kerr, A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L.Rev. 1208, 1217 n. 61 (2004), quoted by Chief Justice Toal, *supra* (noting the technical meaning of "backup copy" as used in the SCA); *Powerex Corp. v. Reliant Energy Services, Inc.,* 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.").

5. Thus, I agree with Justice Hearn that we must interpret the language of subsection (B) and with her conclusion that the e-mails in this case were not protected.